IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**UNITED STATES OF AMERICA**

v.                                                                  CASE NO. 5:24cr11-MW

**DEAN PADGETT**

_____/

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE DEFENDANT'S HEARSAY BASED, IRRELEVANT, AND PREDJUCIAL STATEMENTS TO LAW ENFORCEMENT**

Defendant, Dean Padgett, by and through undersigned counsel, hereby responds to the Government's Motion in Limine to Exclude Defendant's Hearsay Based, Irrelevant and Prejudicial Statements to law Enforcement. Mr. Padgett does not object to the exclusion of any hearsay based rumors. Further, Mr. Padgett respectfully moves this Court to make a finding that the following evidence is admissible: Mr. Padgett's statements pertaining to Mr. Touchton being in a gang, Mr. Touchton being "trouble" and Mr. Padgett's explanation for why inmates flood their cells. In support of this motion, Mr. Padgett states the following:

**A. Hearsay Based Rumors**

Mr. Padgett does not object to the government's general request to exclude

1

any discussion of hearsay-based rumors and Mr. Padgett's opinions of those rumors.

### B. Mr. Padgett's Mention of Touchton Being in A Gang

During his recorded interview with law enforcement, Mr. Padgett detailed the events leading up to he and Officer Mazingo being in the triage room of the medical unit with Mr. Touchton. Mr. Padgett provided law enforcement with context, offering information about Mr. Touchton's state of mind at the time. Specifically, Mr. Padgett mentioned Mr. Touchton's claim that he was going to commit suicide. Mr. Padgett explained that Mr. Touchton's claim prompted the officers to escort Mr. Touchton to the medical unit. Mr. Padgett first mentioned that ". . . medical had people, 32 inmates in the lobby, and of course [Mr. Touchton] went to hollering, something about MS-13 or whatever gang he's in. I don't remember. I told him to be quiet." Government's Motion in Limine to Exclude Defendant's Hearsay Based, Irrelevant, and Prejudicial Statements to Law Enforcement (ECF No. 28), Exhibit A, pp. 3 at 32-34. Later in his interview, Mr. Padgett described that when he and Mr. Mazingo walked Mr. Touchton through the classification door into the lobby of the medical unit, "… [Mr. Touchton] started. I don't remember what gang…call them, tell them, blah blah blah. So, and trying to get them agitated, so yeah we escorted him on into the … triage room." *Id.*, pp. 6 at 22-24.

2

Had Mr. Padgett simply told law enforcement that he knew that Mr. Touchton was gang affiliated, that would have been a different scenario and that information would likely be inadmissible. But that is not the case. Mr. Touchton was "hollering" about "whatever gang he was in" in an attempt to "agitate" the other inmates. He directed the other thirty-two inmates who were waiting in the medical lobby to contact members of his gang about Mr. Padgett and Mr. Mazingo bringing him to the triage room. This is relevant because it shows Mr. Touchton's desire for the other inmates to know he was in a gang. He wanted to get their attention to the point that he intended for them to feel pressured, and even threatened, to support the allegations that he was about to make against Mr. Padgett.

Should the jury not hear Mr. Touchton's exact words, specifically the reference to his gang membership, they will not understand the inmates' bias created by Mr. Touchton's statements to them. "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel,* 469 U.S. 45, 52 (1984). For this reason, the probative value of Mr. Padgett's statements describing Mr. Touchton's statements about his gang affiliation are not substantially outweighed by a danger of

3

unfair prejudice, confusing the issues, or misleading the jury. F. R. Evid.403.

### B. Mr. Padgett's Mention of Touchton Being "Trouble"

Mr. Padgett mentions in his interview that the institution has "had a lot of trouble" with Mr. Touchton because he's gotten so many "DRs" that he is no longer permitted to be on the compound of the facility. *Id.,* pp. 13 at 30-46; pp. 14 at 1-30. The details of this discussion provide crucial and probative context for the jury as to why Mr. Touchton was classified the way he was goes directly to his motive in to falsely accuse Mr. Padgett, or any of the guards, of harming him. This background information is necessary to understand the allegations. Without it, the jury would be left wondering why the staff may have treated Mr. Touchton differently than they treated the inmates who were in the lobby of the medical unit. These inmates, who were waiting in an open lobby and were not constrained or handcuffed as Mr. Touchton was, had different classifications and a different disciplinary history at the facility. The lack of this knowledge could lead to confusion of the issues and has the potential to mislead the jury to think that Mr. Touchton was being treated improperly by the institution staff leading up to the alleged incident. F. R. Evid.403.

### C. Mr. Padgett's Explanation for Inmates Flooding Their Cells

Special Agent Crecelius asks Mr. Padgett why inmates flood their cells, and

4

Mr. Padgett explains that it's the inmates' strategy for being moved to another cell. Government's Motion in Limine to Exclude Defendant's Hearsay Based, Irrelevant, and Prejudicial Statements to Law Enforcement (ECF No. 28), pp. 8 at 1-3. Mr. Padgett discusses how the cell is less desirable because there is a camera in it, and it has the spit flap on it. *Id.*, pp. 8 at 4-8. Although the government did not discuss these particular details in their motion, they have indicated, by highlighting this portion of the transcript, that they are objecting to the admission of these statements.[1] These statements are probative as they speak directly to Mr. Touchton's motive to be taken away from a cell that is monitored, with a camera. He understood that by flooding his cell, where there was a camera, that Mr. Padgett and Mr. Mazingo would respond by taking him into an area such as the triage room, where there were no cameras. Mr. Touchton could have made the allegation against Mr. Padgett and Mr. Mazingo in any given area of the facility, but he specifically chose to wait until he was somewhere where there would be no video evidence to contradict his allegations.

WHEREFORE, for the foregoing reasons, Mr. Padgett respectfully requests that this Honorable Court allow the admission of Mr. Padgett's statements

---

[1] Attached as Defense Exhibit A is Defense's Amended Positions on the government's proposed redactions.

pertaining to Mr. Touchton being in a gang, Mr. Touchton being "trouble" and Mr. Padgett's explanation for why inmates flood their cells.

        Respectfully submitted,

        JOSEPH F. DEBELDER
        FEDERAL PUBLIC DEFENDER

        /s/ *Elizabeth L. Vallejo*
        ELIZABETH L. VALLEJO
        Assistant Federal Public Defender
        Florida Bar No. 127120
        227 N. Bronough Street
        Suite 4200
        Tallahassee, FL 32301
        Phone (850) 942-8818
        Fax (850) 942-8809

        Attorney for Defendant

## CERTIFICATE OF SERVICE AND WORD COUNT

I certify that a copy of the foregoing has been furnished via ECF to AUSA David Goldberg, this 2nd day of August, 2024. This motion contains 1,170 words.

        /s/ *Elizabeth L. Vallejo*
        Elizabeth L. Vallejo